William L. Corrigan, Plaintiff-Appellee, v. Kentucky Insurance Agency, Inc., a Kentucky Corporation, and Underwriters at Lloyds, London, Also Known as Lloyds of London, an Unincorporated Association, Defendants-Appellants.

Gen. No. 11,153.

Fourth District.

April 6, 1970.

CRAVEN, P. J., dissenting.

Kenneth L. Strong, of Pontiac, for appellants.

Walter L. Stodd, of Pontiac, for appellee.

TRAPP, J.

The defendants, Kentucky Insurance Agency, Inc., an insurance broker, and Lloyds of London appeal from a judgment in favor of plaintiff, William L. Corrigan, in the sum of $4,000 on a horse mortality insurance policy. The case was tried by the court without a jury. Defendants contend that the judgment is against the manifest weight of the evidence.

On June 13, 1966, plaintiff and one Gallivan representing Kentucky, had a telephone conversation concerning insurance on horses and under date of June 16, 1966, defendant insurance agency wrote a "cover note" or binder on Lloyd's form insuring horse, "Alifan," for $4,000, at a premium of $280, and horse, "Bred Red," for $2,000, at a premium of $140. Kentucky sent application forms to plaintiff who executed and returned them June 18, 1966. On June 20, 1966, the broker wrote plaintiff:

> "Thank you for your order for horse Mortality Insurance. We have put the insurance in force subject to receipt of veterinary's certificate stipulating the horses are sound.
> "If you have not done so, please have a veterinary examine the horses and mail one of the blue certificates we sent you to us. I shall appreciate it very much if you will advise me of the name of the veterinary and his address."

On June 24, 1966, Kentucky received the certificate of Robert G. Kern, veterinary at Cahokia Downs, certifying that "Alifan" and "Bred Red" were sound. He also stated on the certificate, "Swamp Fever has been diagnosed on the track."

Several phone conversations took place between June 16, 1966, and July 15, 1966, as to why the insurance certificates had not been delivered. Gerald Gallivan,

81

treasurer of Kentucky, states that he first advised plaintiff:

"... that we would not insure the animals. He called me several times and wanted to know why I had not sent him evidence of insurance, and I told him why. I told him we had not received a satisfactory veterinary certificate, and therefore there was no insurance in force. I did not mention the Swamp Fever to him in that conversation because we had not received any veterinary certificate up to June 24th. Mr. Corrigan called me on June 23rd. Between June 24, 1966 and July 15, 1966, I had a conversation with Mr. Corrigan and communicated to him that the horse Alifan was not insurable."

Plaintiff testified to a phone conversation sometime between June 15 and June 25th, 1966, in which he said Gallivan told him "not to worry and the horse was alright." Richard Trainor, who was employed in some capacity by plaintiff, testified to listening to three telephone conversations between plaintiff and Gallivan, the last one being on July 6, 1966, in which Gallivan told plaintiff the horses were insured. He stated that Swamp Fever was never mentioned.

On July 15, 1966, plaintiff wrote Gallivan:

"Due to no written confirmation of Horse insurance we have made other arrangements."

On July 18, 1966, Gallivan wrote plaintiff a letter including the following:

"We were sorry to receive your letter today saying that you had placed your insurance elsewhere. We were trying hard to correctly underwrite the business so that there would be no question in the event of loss."

82

Plaintiff testified that he had not ever seen Gallivan's letter of July 18, 1966, prior to the trial. He also testified that after he wrote the letter of July 15, 1966, regarding getting insurance elsewhere, he talked to Gallivan who said everything was alright. He stated:

> "Within a couple of days after mailing Plaintiff's exhibit No. 9 (the letter regarding obtaining coverage elsewhere) I talked to Gallivan over the telephone and was given to understand the note would be disregarded cancelling the insurance or making other arrangements." (Parentheses added.)

On July 29, 1966, the horse "Alifan" while in a race at Arlington, broke his leg and was destroyed. Under date of July 30, 1966, the Kentucky Insurance Agency billed plaintiff for premiums for three horses giving policy number "Lloyds CN8281" on "Shot O'Jen" for $175, and Lloyds policy number "CN8282" on "Schedule of Thoroughbreds," which included "Alifan" and "Bred Red" for $420. The bill also showed "Bred Red cancelled" and a credit of $112, making a total bill of $483. The billing period commenced July 15, 1966, on the statement. This bill was paid on August 3, 1966, by plaintiff. Defendant insurance agency tendered the premium back about one year later on July 13, 1967.

On August 23, 1966, the defendant insurance agency received notice of the loss of "Alifan," and on the next day wrote plaintiff that by reason of his July 15, 1966, letter they did not have insurance in force on this animal.

Gallivan explained the complete writing of the cover note in the first instance as follows:

> "We did not issue a Cover Note insuring the horse Alifan. We drew up the papers like we always do, but we never sent Mr. Corrigan any evidence of that Cover Note, *or Lloyds any evidence of that*

*Cover Note* because we didn't consider it binding until such time as we got a satisfactory veterinarian's certificate." (Emphasis ours.)

He explained the billing as follows:

"Plaintiff's exhibit 5 is a statement prepared by our office on July 30, 1966. It was not prepared under my care and supervision. Our accountant prepared it. The books reflected a charge, and this particular statement was prepared and sent to Mr. Corrigan. The charges should not have been entered on the books because the transaction had not been completed, but we draw up the complete papers at the time we first take the order, and Mr. Corrigan never got an original statement on this horse at all. This was probably a lapse on our bookkeeping department's part. We fill out the forms which are in triplicate or quadruplicate and file them in a file where later they are picked up and entered."

Gallivan also testified:

"We are talking about up to June 24th and up to that point I had no written correspondence or telephonic communication with Mr. Corrigan or Mr. Trainor indicating that there was insurance on the horse 'Alifan.' "

Again he testified:

"The next thing that happened Mr. Corrigan called me again and said 'I still do not have any written evidence of insurance' and I didn't have any satisfactory veterinary certificate and could not send him any evidence of insurance. This conversation occurred early in July, maybe the 6th or 7th, along in there."

This Court notes that on one of the copies of the Cover Note is a rubber stamp with blanks to be filled in.

84

Opposite the designation "Sent to Lloyds" is an ink date "7–7–66." Immediately below this is the designation "Veterinarian" and the blank opposite is filled in in ink "Robert Kern." Immediately below this is the designation "date examined," and opposite the designation in ink is "6–16–66."

This Court also notes an endorsement on the Cover Note under date of July 7, 1966, as follows:

"In consideration of return premium of $112.00, it is hereby understood and agreed that the insurance on Bred Red, Item No. 2, has been cancelled, thereby amending the total amount of the policy to read:

"Four Thousand and no/100 – – – – – – Dollars.

"All other terms and conditions remain unchanged."

Gallivan also testified:

"So far as the July 30th bill is concerned, we prepare the papers at the time we receive the order just as though we are going to issue the policy. We do the billing also. When the insurance is effected, we send the papers plus the original bill to the assured and the various copies of the bills are placed in different compartments for entry on the books, and ordinarily we don't have any long delay in getting vet certificates as we had in this case, and I think that is the reason the billing got on our records because of this fact."

Gallivan stated that the insurance agency had difficulty in crediting the check in payment of the premium. However, there is a notation on the front of the check, "For Wm. Corrigan horse ins."

■ The authorities are uniform that the judgment of the trial court on a trial without a jury, which is based upon a determination of fact in respect to con-

85

flicting testimony, should not be disturbed on appeal unless that determination is clearly against the manifest weight of the evidence.

Defendant's witness made numerous unqualified statements which are simply not borne out by the evidence. The assertion that the agency never indicated that there was insurance in force in writing or orally is contradicted by the letter of June 20, 1966, and by the testimony of William Corrigan and Frank Trainor. The assertion that the agency never notified Lloyds of the coverage is contradicted by the agency records. The explanation that the billing was made at the time the original papers were made up does not fit with the July 15th insurance period on the bill, nor with the credit for the July 7th endorsement cancelling the coverage on "Bred Red." The fact that the coverage was cancelled does not fit the theory that it never existed. Equally significant is the fact that of the original premium of $140 on "Bred Red," only $112 was credited on the bill for the cancellation. There is no contention that the horse "Alifan" was being treated separately from "Bred Red" so far as the original conditions of coverage were concerned.

The trial court found from the evidence that the horses were sound and the veterinarian so certified to the insurer. Accordingly, this asserted condition had been met.

■ While it is true that after plaintiff's letter that he was obtaining coverage elsewhere, the continuance of coverage depends upon the testimony of William Corrigan that Gallivan advised him he would ignore the letter, this Court has no basis for disturbing the trial court's determination of the weight of this testimony. While Gallivan flatly denies the conversation, the subsequent action of billing plaintiff and the failure to explain the company record of notification of Lloyds without any cancellation of the notice to Lloyds are

items consistent with plaintiff's contention that Gallivan advised him he would ignore the letter.

■ The judgment of the trial .court as to the liability of Lloyds by reason of the agency placing the insurance in force is not against the manifest weight of the evidence, and should be affirmed. Since Lloyds are liable by reason of placement of the insurance, the defendant, Kentucky Insurance Agency, Inc., could not be liable for failure to place the coverage. The judgment against Kentucky Insurance Agency, Inc., should be reversed.

The judgment against Underwriters at Lloyds London, also known as Lloyds of London, is affirmed.

The judgment against Kentucky Insurance Agency, Inc., is reversed.

Affirmed in part, reversed in part.

SMITH, J., concurs.

CRAVEN, P. J., dissents.